UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PLEASURE ISLAND, INC., et al.,

                Plaintiffs,

  - against -

CITY OF NEW YORK, et al.,

                Defendants.
------------------------------------------------------------x

MEMORANDUM AND ORDER

12 Civ. 4699 (ILG) (SMG)

GLASSER, Senior United States District Judge:

      Plaintiffs Pleasure Island, Inc. d/b/a Galaxy Restaurant ("Pleasure Island"), Marat Zagorin ("Zagorin"), and Mark Shteynshlyuger ("Shteynshlyuger," collectively "plaintiffs") bring this action against the City of New York ("City"), Community Board #15 ("CB15") and its members (together with the City, "city defendants"), New York State Liquor Authority ("SLA"), four current and former SLA officials ("SLA officials"), and two state legislators (together with the SLA officials, "individual state defendants," and with the SLA, "state defendants"), alleging that their application for a liquor license was denied based upon religion and national origin in violation of federal, state, and city law. Plaintiffs also bring claims for defamation and tortious interference with contracts under state law.

      Currently before the Court are state defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and city defendants' motion to dismiss pursuant to Rule 12(b)(6). For the reasons set forth below, defendants' motions are hereby GRANTED.

## BACKGROUND

### I. Facts

The following facts are taken from plaintiffs' Complaint, documents referenced in the Complaint, and public records. They are accepted as true for purposes of this motion, except to the extent they are contradictory.

From about 2005 through 2008, Zagorin was one-third owner of T E M Bar Lounge Corp. ("T E M") located at 816 Avenue U in Brooklyn, New York. Complaint dated September 12, 2013 ("Compl.") ¶ 24 (Dkt. No. 1).[1] T E M held an on-premises liquor license and was cited for multiple violations. Compl. ¶¶ 26-28; Affirmation of Mark D. Frering dated Jan. 3, 2013 ("Frering Aff."), Ex. A at 1-2.[2] From 2008 through 2010, a Japanese restaurant unaffiliated with Zagorin operated in this location. Compl. ¶ 54.

---

[1] On March 20, 2013, Magistrate Judge Gold granted plaintiffs leave to attach a Proposed Amended Complaint ("PAC") to their supplemental opposition papers. Despite filing the PAC outside the 21 day window to amend as a matter of course, plaintiffs did not seek the Court's permission to amend their Complaint. Fed. R. Civ. P. 15(a). While "leave to amend should be granted 'when justice so requires,' motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). To the extent plaintiffs move to amend the Complaint under Rule 15(a), their motion is denied as futile and causing undue delay. The additional five paragraphs of the PAC do not cure the deficiencies of the Complaint, and the PAC has delayed proceedings for weeks by prompting an additional round of briefing.

[2] Plaintiffs claim they committed "minor violations," such as failing to properly display certificates, while SLA found more serious violations, such as noise complaints and "after hours" sales of alcohol. The Court may take judicial notice of the SLA's decision because plaintiffs relied upon it in drafting the Complaint. David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co., --- F. Supp. 2d ----, 2013 WL 1277882, at *4 (E.D.N.Y. Mar. 29, 2013).

In January 2011, plaintiffs began construction on 816 Avenue U in order to open a new establishment: Pleasure Island. Id. ¶ 20. Plaintiffs characterize Pleasure Island as an "upscale full service restaurant geared towards young professionals with recorded music and, on occasion, light live entertainment." Id. ¶ 37. Shteynshlyuger owned 90% of Pleasure Island, Zagorin owned 10%, and together they spent about $425,000 in construction costs and $190,000 in expenses. Id. ¶¶ 22-23. Both Shteynshlyuger and Zagorin are Russian and Jewish. Id. ¶¶ 8-9.

Before starting construction, plaintiffs applied for an on-premises liquor license for Pleasure Island. Id. ¶¶ 19, 37. Plaintiffs' liquor license application characterizes Pleasure Island as a "Bar / Lounge," and in the "Extent of Food Service" section selects the "tavern" option for "alcohol sales primarily," and not the "restaurant" or "tavern-restaurant" option. Declaration of Teresita V. Magsino dated Dec. 28, 2012 ("Magsino Decl."), Ex. A (Dkt. No. 36-2). Plaintiffs allege that they were assured by unspecified individuals that their application for a liquor license would be "walked through." Compl. ¶ 39.

SLA is the state agency responsible for liquor license applications. Id. ¶ 11. Ordinarily, SLA will approve an application for an on-premises liquor license unless there is good cause for denial. Id. ¶ 38. However, when an applicant for an on-premises liquor license is located within a 500 foot radius of three or more existing establishments with on-premises liquor licenses, the burden shifts and SLA will deny the license unless it finds that granting the license is in the public interest ("500 Foot Law"). Frering Aff., Ex. A at 2. As part of that determination, SLA must consult with the local Community Board and hold a hearing ("500 Foot Hearing"). Id. Plaintiffs acknowledge that 816 Avenue U is subject to the 500 Foot Law and falls within the

jurisdiction of CB15, which prepares nonbinding recommendations of approval or disapproval of liquor license applications. Id. at 2-6.

On August 30, 2010, plaintiffs mailed a copy of their on-premises liquor license application to CB15, which considered it at its October 27, 2010 meeting. Magsino Decl., Exs. A-B. The Complaint and the documents incorporated by reference in the Complaint present starkly opposing accounts of that meeting. According to the meeting minutes, board member Robert Gevertzman objected to approving the liquor license because of prior issues at the same location, which prompted other board members to voice opposition to Pleasure Island. Magsino Decl., Ex. B. Chairperson Theresa Scavo took a vote, and CB15 unanimously voted to send a letter recommending rejection to SLA. Id. In contrast, plaintiffs claim that Scavo opposed their liquor license application because she did not want to live near a Russian, unkosher establishment. Compl. ¶¶ 21, 35-36, 44. Prior to the meeting, she allegedly engaged in a public smear campaign against plaintiffs that induced State Senator Martin Golden and Assemblyman Steven Cymbrowitz to write letters in opposition to plaintiffs' liquor license application on official letterhead. Id. ¶¶ 31-34, 41, 43. At the meeting, Cymbrowitz's letter was read aloud, and CB15 members claimed that they received 300 phone calls in opposition to Pleasure Island. Id. ¶¶ 29, 33, 53. Plaintiffs allege that CB15 made up the 300 phone calls to further their conspiracy to only approve kosher restaurants. Id. ¶¶ 29, 53, 60-61.[3]

---

[3] According to the minutes, CB15 considered twelve other liquor license applications at the same meeting as Pleasure Island, none of which garnered any opposition. Although the minutes do not indicate whether these establishments are kosher or not, several, such as "Perry's Seafood Restaurant," are very likely unkosher. Magsino Decl., Ex. B.

4

On April 25, 2011, plaintiffs filed their liquor license application with SLA, and an SLA representative held a 500 Foot Hearing for plaintiffs' liquor license application on May 17, 2011. Frering Aff., Ex. A at 1. Although no one appeared at the hearing to oppose plaintiffs' application, CB15 and members of the public informed the hearing officer of their opposition outside the hearing. Id. at 2-3; Compl. ¶¶ 39, 45. The hearing officer accepted two letters in opposition on May 19, 2011, which plaintiffs allege was improper. Id.

SLA held a full board meeting to consider plaintiffs' application on October 19, 2011. Compl. ¶ 47. At the meeting, plaintiffs claimed that the opposition to their application stemmed from false rumors that Pleasure Island was going to be an adult venue. Id. They testified that they were opening a restaurant that would operate as a lounge late at night, not an adult venue, and two additional witnesses spoke in support of plaintiffs. Id. ¶¶ 48-50. A representative for Assemblyman Cymbrowitz appeared in opposition to plaintiffs' application and emphasized that community opposition, including the 300 phone calls, stemmed from prior problems at the location. Id. ¶¶ 33-34; Frering Aff., Ex. A at 4. SLA members noted that Pleasure Island's website used the word "nightclub" and were skeptical that Pleasure Island would be a restaurant; however, they decided to defer ruling on plaintiffs' application because of the rumor allegations. Frering Aff., Ex. A at 4-5.

SLA considered plaintiffs' application again at its November 16, 2011 full board meeting. At the meeting, a representative for plaintiffs presented a petition of support from members of the community and offered a number of changes to assuage CB15's concerns, such as changing the name of the establishment to "Galaxy Restaurant," closing by 2:00 A.M. instead of 4:00 A.M., adding noise-absorbing curtains, offering

5

valet parking, and using an age verification system. Compl. ¶¶ 51-52. Plaintiffs informed CB15 of these proposed changes prior to this meeting, but CB15 continued to oppose plaintiffs' liquor license application. Id. ¶ 51; Frering Aff., Ex. A at 5. SLA concluded that CB15 unanimously voted against granting the liquor license despite being informed of these proposed changes due to the history of problems at the location, which stopped when the Japanese restaurant operated there. Frering Aff., Ex. A at 5. In light of CB15's and Cymbrowitz's opposition, and the lack of complaints about an establishment not affiliated with Zargorin in the same location, SLA voted that granting plaintiffs' application was not in the public interest. Id. at 6-7. Plaintiffs allege that SLA conspired with CB15 to deny its application because CB15 sent an SLA employee an email thanking her for disapproving plaintiffs' application. Compl. ¶ 42.

## II. Procedural History

Plaintiffs filed this action on September 20, 2012, alleging federal, state, and city discrimination claims and additional state law claims. Dkt. No. 1. On December 28, 2012, city defendants moved to dismiss the Complaint, arguing that CB15 and its members merely acted in an advisory capacity and, therefore, cannot be held liable. Dkt. No. 36-4. Plaintiffs filed their opposition on February 7, 2013, and city defendants filed their reply on March 1, 2013. Dkt. Nos. 44-45.

On January 11, 2013, state defendants moved to dismiss the Complaint, arguing, among other things, that plaintiffs' claims are barred by the Eleventh Amendment. Dkt. No. 41-1. Plaintiffs filed their opposition on March 8, 2013, to which they attached the PAC, and state defendants filed their reply on April 19, 2013. Dkt. Nos. 46 & 50. On March 19, 2013, plaintiffs filed a supplemental opposition to city defendants' motion

based on the PAC with Magistrate Judge Gold's permission. Dkt. No. 48-1. City defendants filed their response on April 5, 2013. Dkt. No. 49.

## DISCUSSION

### I. Legal Standards

#### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). To defeat a Rule 12(b)(1) motion to dismiss, plaintiffs "bear[] the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). In resolving such a motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff[s]." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (quotation omitted). However, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).

#### B. Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the

7

plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In adjudicating a Rule 12(b)(6) motion, a district court may consider "the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (quotations omitted).

## II. Federal Claims

Plaintiffs allege that various government agencies and officials conspired to discriminate against them based upon religion and national origin in violation of the First and Fourteenth Amendments, and cite a laundry list of provisions of the Civil Rights Act: 42 U.S.C. §§ 1983, 1985, and 1986. Compl. ¶¶ 64-83.

8

"Section 1983 governs civil rights actions against a person acting under color of state law who 'subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.'" Reyes v. City of New York, No. 10-cv-1838, 2012 WL 37544, at *3 (E.D.N.Y. Jan. 9, 2012) (quoting 42 U.S.C. § 1983). "The statue itself is not a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred," here, the First and Fourteenth Amendments. Id. (quoting Fowlkes v. Rodriguez, 584 F. Supp. 2d 561, 572 (E.D.N.Y. 2008)). "Section 1985 prohibits conspiracy to interfere with civil rights," and "§ 1986 creates a cause of action for neglecting to prevent an actionable conspiracy under § 1985." Sylla v. City of New York, No. 04-cv-5692, 2005 WL 3336460, at *7 (E.D.N.Y. Dec. 8, 2005). Plaintiffs seek $10 million in compensatory damages and an additional $10 million in punitive damages, as well as attorneys' fees and costs, for their federal claims. Compl. ¶¶ 70, 80, 83.

## A. State Defendants

Plaintiffs bring claims against SLA, the SLA officials in their individual and official capacities, and two state legislators in their individual and official capacities. Id. ¶¶ 11-17. Official-capacity suits are fundamentally directed at the government entity of which the officer is an agent, while "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citations omitted). Whereas "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity," "an official in a personal-capacity action may . . . be able to assert personal immunity defenses." Id. at 166-67.

9

The Eleventh Amendment provides sovereign immunity from suits for money damages to state agencies and state officials acting in their official capacities, including state legislators. Id. at 169; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984); Rini v. Zwirn, 886 F. Supp. 270, 295 (E.D.N.Y. 1995). Therefore, state defendants' motion to dismiss under Rule 12(b)(1) is granted with respect to SLA and the individual state defendants in their official capacities. Tessler v. Paterson, 768 F. Supp. 2d 661, 672 (S.D.N.Y. 2011).[4]

Senator Golden and Assemblyman Cymbrowitz are absolutely immune from personal liability. State legislators are entitled to absolute immunity from personal-capacity suits "for a wide array of legislative acts within 'the sphere of legitimate legislative activity.'" Favors v. Cuomo, 285 F.R.D. 187, 208 (E.D.N.Y. 2012) (quoting Bogan v. Scott-Harris, 523 U.S. 44, 46 (1998)). Taking an opposing position during a public meeting is "integral to the legislative process," and, therefore, is entitled to legislative immunity. Avila v. Estate of Kroogman, No. 3-02CV851, 2006 WL 214032, at *3 (D. Conn. Jan. 27, 2006) (citing Bogan, 523 U.S. at 55). Accordingly, state defendants' motion to dismiss under Rule 12(b)(6) is granted with respect to both state legislators.

---

[4] Although the Eleventh Amendment provides sovereign immunity against suits for money damages, it permits suits against state officers in their official capacity that allege ongoing violations of federal law and seek prospective relief. In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) (citing Ex parte Young, 209 U.S. 123 (1908)). While the Complaint makes a lone, passing reference to unspecified injunctive relief, it "fails to sufficiently allege any ongoing violation of federal law, much less any ongoing violation perpetrated by [individual state defendants]." Foster v. Diop, No. 11-CV-4731, 2013 WL 1339408, at *9 (E.D.N.Y. Mar. 31, 2013); Compl. at 24. Therefore, despite the volume of ink expended by the parties on this issue, the Ex parte Young doctrine is inapposite.

State defendants' motion to dismiss under Rule 12(b)(6) is also granted with respect to the SLA officials because plaintiffs fail to allege a single instance of discriminatory conduct by the SLA officials. In sum, the Court dismisses all federal claims against state defendants with prejudice.

### B. City Defendants

Plaintiffs bring claims against CB15, all members of CB15 in their individual and official capacities, and the City. Compl. ¶¶ 10, 18.

#### i. Claims against CB15 and its Members

"To state a claim under § 1983, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law." Sazon Inc. v. City of New York, No. 11 Civ. 3666, 2011 WL 5910171, at *3 (S.D.N.Y. Nov. 28, 2011) (citing Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)). A person acts under color of law when he (1) acts in his official capacity "clothed with the authority of state law," or (2) acts "under 'pretense' of law" by purporting to act with official power. Id. at *3-4 (quoting West v. Atkins, 487 U.S. 42, 49 (1988); Screws v. United States, 325 U.S. 91, 111 (1945)).

CB15 and its members cannot be held liable under § 1983 because they did not act under color of law. It is well-established that for all regulatory activities, a "Community Board's role in the review process is merely advisory." Greenberg v. City of New York, 832 N.Y.S.2d 16, 21 (1st Dep't 2007) (citing Cmty. Bd. 7 of Borough of Manhattan v. Schaffer, 639 N.E.2d 1, 5 (N.Y. 1994)); Sazon, 2011 WL 5910171, at *4 (citing cases). Here, CB15 sent a non-binding recommendation to SLA, which had sole authority over plaintiffs' liquor license application. Since CB15 and its members lacked the power to approve or disapprove plaintiffs' application, and plaintiffs do not allege

11

that CB15 misrepresented its ability to do so, plaintiffs have not adequately pleaded that CB15 or its members acted under color of law. See Sazon, 2011 WL 5910171, at *4. Similarly, Scavo is but a single member of CB15, so her alleged actions and misrepresentations are, a fortiori, not under color of state law. Therefore, plaintiffs' § 1983 claim against CB15 and its members is dismissed.

Plaintiffs also fail to adequately plead conspiracy claims under §§ 1985 and 1986. "In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Sylla, 2005 WL 3336460, at *7 (quoting Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003)). A single "thank you" email does not establish an agreement between CB15 and SLA. Similarly, the fact that several named defendants sit on the same community board is insufficient to support the existence of an agreement among them. Sazon, 2011 WL 5910171, at *6. "Where plaintiff[s] fail[] to state a viable § 1985 claim, [they] cannot state a claim under § 1986." Sylla, 2005 WL 3336460, at *7. Accordingly, plaintiffs' §§ 1985 and 1986 claims against CB15 and its members are dismissed.

### ii. Claims against the City of New York

"In order to establish municipal liability for unconstitutional acts by municipal employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal policy, custom, or practice." Trigg v. New York City Transit Auth., No. 99-CV-4730, 2001 WL 868336, at *11 (E.D.N.Y. July 26, 2001) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). A plaintiff can establish this by alleging a formal act of a municipality's governing body, a single act by a municipal employee with policymaking authority, or an informal custom that "is so widespread as to have the

force of law." Sazon, 2011 WL 5910171, at *5 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 398, 404 (1997)).

Plaintiffs have not alleged any formal or informal City policies, customs, or practices; CB15 has no policymaking authority, as discussed above; and Scavo's alleged biases and "actions alone cannot support an inference of the existence of a permanent and well-settled widespread practice." Andrews v. City of New York, CV-01-7333, 2004 U.S. Dist. LEXIS 30290, at *33 (E.D.N.Y. Nov. 23, 2004); Sazon, 2011 WL 5910171, at *5. Accordingly, plaintiffs' federal claims against the City are dismissed.

In sum, the Court dismisses all federal claims against city defendants with prejudice.

### III. State and City Law Claims

The Court may decline to exercise supplemental jurisdiction over state and municipal law claims if the Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006). Therefore, plaintiffs' state and city law claims are dismissed without prejudice. See Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008).

### CONCLUSION

For all of the foregoing reasons, defendants' motions are hereby GRANTED.

SO ORDERED.

Dated:  Brooklyn, New York
May 24, 2013

s/ILG

_____
I. Leo Glasser
Senior United States District Judge